UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

JAMIS RENE MICKENS                    CIVIL ACTION NO. 6:15-cv-02114

VERSUS                                JUDGE TRIMBLE

U.S. COMMISSIONER,                    MAGISTRATE JUDGE HANNA
SOCIAL SECURITY
ADMINISTRATION

## REPORT  AND  RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be affirmed.

### ADMINISTRATIVE  PROCEEDINGS

The claimant, Jamis Rene Mickens, fully exhausted his administrative remedies

prior to filing this action in federal court.  The claimant filed an application for

disability insurance benefits ("DIB") and an application for supplemental security

income benefits ("SSI"), alleging disability beginning on December 4, 2012.[1]  His

applications were denied.[2]  The claimant requested a hearing,[3] which was held on

---

[1]      Rec. Doc. 9-1 at 111, 117.

[2]      Rec. Doc. 9-1 at 45, 53.

[3]      Rec. Doc. 9-1 at 66.

February 25, 2014 before Administrative Law Judge Carol Lynn Latham.[4]  The ALJ issued a decision on June 26, 2014,[5] concluding that the claimant was not disabled within the meaning of the Social Security Act from December 4, 2012 through the date of the decision.  The claimant asked for review of the decision, but the Appeals Council concluded on June 24, 2015 that there was no basis for review.[6]  Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g).  The claimant then filed this action seeking review of the Commissioner's decision.

## SUMMARY OF PERTINENT FACTS

The claimant was born on December 13, 1970.[7]  At the time of the ALJ's decision, he was forty-three years old.  He graduated from high school,[8] and has past relevant work experience working for oilfield service companies performing hydrostatic testing on pipelines, in the shipping department of a distribution center, and performing processing and packing work in a factory.[9]  He alleges that he has

---

[4]     The hearing transcript is found at Rec. Doc. 9-1 at 27-44.

[5]     Rec. Doc. 9-1 at 12-20.

[6]     Rec. Doc. 9-1 at 4.

[7]     Rec. Doc. 9-1 at 29.

[8]     Rec. Doc. 9-1 at 36, 167.

[9]     Rec. Doc. 9-1 at 31, 40, 149, 167, 176.

been disabled since December 4, 2012[10] (the date he last worked[11]) due to an L4 and L5 spinal fusion, Type II diabetes, high blood pressure, and high cholesterol.[12]

On September 16, 2011,[13] the claimant established a doctor-patient relationship with Kevin N. Guillory, M.D.  Dr. Guillory diagnosed the claimant with diabetes – Type 2 and hypertension, and he prescribed Metformin and Lisinopril.

On February 27, 2012, the claimant first saw Dr. George Raymond Williams, an orthopedic surgeon.[14]  The claimant told Dr. Williams that he was rear-ended in a car wreck on August 2, 2011, and was experiencing low back pain with pain radiating down his right leg.  Dr. Williams's diagnoses were lumbar herniated nucleus pulposa, lumbar degenerative disc, lumbar back pain, and lumbar radiculopathy.  On examination, the claimant exhibited a limited range of motion in flexion and lateral bending of his lumbar spine; sitting and supine straight leg tests were negative; toe rise and walk, heel walk, and tandem walk were normal; but there was some numbness on the right that Dr. Williams correlated to the nerves at S1.  Dr. Williams

---

[10]     Rec. Doc. 9-1 at 46, 111.

[11]     Rec. Doc. 9-1 at 37-38, 166.

[12]     Rec. Doc. 9-1 at 46, 166.  The surgery performed on Mr. Mickens was actually an anterior lumbar interbody fusion at L5-S1.  Rec. Doc. 9-1 at 179-180, 185-187, 190-204, 262-269.

[13]     Rec. Doc. 9-1 at 221-222.

[14]     Rec. Doc. 9-1 at 226-229, 254-258.

noted that an MRI of the lumbar spine showed a disc protrusion and annular tear at L5/S1.  He prescribed Lortab and Mobic.  He advised the claimant to rest, apply ice and heat, do some stretching and strengthening exercises, and go to physical therapy. The claimant was limited to performing light duty work only.

The claimant returned to Dr. Williams on April 2, 2012 for a steroid injection at L5/S1.[15]  The diagnoses were lumbar back pain and lumbar herniated nucleus pulposa.  The Lortab and Mobic prescriptions were continued.

On June 19, 2012, the claimant returned to Dr. Guillory for reevaluation of his diabetes.[16]  Dr. Guillory noted that the claimant had not been compliant with his diet or with his Lisinopril prescription.  Metformin and Lisinopril were again prescribed.

The claimant again saw Dr. Guillory on June 22, 2012 because lab work had been performed at the previous visit.[17]  A low cholesterol diet was recommended.  He was started on Glyburide, Crestor, and Januvia as well as Testosterone Cyplonate.

The claimant next saw Dr. Williams on June 26, 2012.[18]  Dr. Williams noted that he was continuing to complain of back and leg pain and that the lumbar epidural

---

[15]      Rec. Doc. 9-1 at 230-231.

[16]      Rec. Doc. 9-1 at 218-219.

[17]      Rec. Doc. 9-1 at 215-217.

[18]      Rec. Doc. 9-1 at 232-234.

steroid injection was of no benefit.  Dr. Williams detected pain with palpation at the lumbrosacral junction and noted that the claimant had an antalgic gait, as well as limitations in the range of motion in the lumbar spine on flexion and rotation. However, there was no visible muscle atrophy, no soft tissue triggers, and no muscle spasms.  Sitting and supine straight leg raise tests were negative.  Toe rise and walk, heel walking, and tandem walking all exacerbated the claimant's low back pain. Numbness on the right was correlated with S1.  Dr. Williams diagnosed lumbar back pain, lumbar degenerative disc, lumbar herniated nucleus pulposa, lumbar spondylosis, and lumbar radiculopathy.  He noted that the claimant had tried chiropractic care, therapy, medications, and injections with no lasting benefit. Therefore, Dr. Williams recommended decompression and fusion surgery at L5/S1.

The claimant next saw Dr. Williams on August 8, 2012,[19] again complaining of back and right leg pain.  Sitting and supine straight leg raises tests were negative, but the toe rise and walk, heel walking, and tandem walking test results were abnormal, showing weakness on the right.  There was limited flexion and rotational movement of the lumbar spine.  Numbness on the right correlated to the S1 nerves. Dr. Williams diagnosed lumbar back pain, lumbar degenerative disc, lumbar

---

[19]     Rec. Doc. 9-1 at 235-237.

herniated nucleus pulposa, lumbar spondylosis, and lumber radiculopathy.  He again prescribed Lortab and Mobic, and he recommended surgery.

An MRI of the lumbar spine was performed on October 8, 2012 at OGH Imaging in Grand Coteau, Louisiana.[20]  This test revealed a stable L1 level with a left lateral recess mass that appeared to be benign, mild annular bulging at L3-L4 and L4-L5, and mild annular bulging at L5-S1 with a small central disc protrusion and a very small left foraminal disc protrusion with an annular fissure.

On October 10, 2012, the claimant again saw Dr. Williams.[21]  Sitting and supine leg raise tests were normal, as were toe rise and walk and heel walking tests.  Lortab and Mobic were again prescribed.

The claimant saw Dr. Guillory on January 7, 2013.[22]  Dr. Guillory noted that the claimant had not been compliant with his medications or office visits with regard to his diabetes and high cholesterol.  However, he cleared him for back surgery, which was, at that time, scheduled for January 18, 2013.

---

[20]     Rec. Doc. 9-1 at 261.

[21]     Rec. Doc. 9-1 at 238.

[22]     Rec. Doc. 9-1 at 188-189, 212-213.

The claimant again consulted Dr. Williams on January 14, 2013.[23]  Pain with palpation at the lower lumbar region was noted, as were limitations in flexion and rotation of the lumbar spine.  Sitting and supine straight leg tests were negative.  Toe rise and walk, heel walking, and tandem walking tests all exacerbated his pain.  Numbness on the right was correlated with S1 nerves.  The diagnoses and prescription medications were the same.

The claimant saw Dr. Williams again ten days later, on January 24, 2013.[24]  Upon examination, Dr. Williams noted pain with palpation at the lumbrosacral junction, pain with the toe rise and walk, heel walking, and tandem walking tests but negative sitting and supine straight leg raise tests.  A limited range of motion was noted with flexion and rotation of the lumbar spine, and numbness on the right was correlated with S1 nerves.  The same diagnoses were again listed.  Dr. Williams also noted that a failure of conservative treatment together with pain and dysfunction were sufficient to warrant surgery.

The claimant followed up with Dr. Guillory on February 18, 2013 with regard to his diabetes.[25]  The claimant admitted that he did not monitor his blood sugar or

---

[23]     Rec. Doc. 9-1 at 239-242.

[24]     Rec. Doc. 9-1 at 243-245.

[25]     Rec. Doc. 9-1 at 209-211.

follow the suggested diet.  His blood sugar remained elevated but there was an improvement in triglycerides, although they too remained elevated.  His prescriptions remained the same.  He started testosterone treatment the next day.[26]

The claimant's next visit with Dr. Williams was on February 26, 2013.[27]  The claimant moved around the office normally, had a normal gait and normal pulses, he had no visible muscle atrophy, no soft tissue triggers were palpated, and he had no muscle spasms.  Straight leg raise tests were negative, both sitting and supine.  However, he had pain with palpation of the lumbrosacral junction, pain with toe rise and walk, heel walking, and tandem walking, and limited range of motion upon flexion and rotation of the lumbar spine.  Dr. Williams repeated the same diagnoses, the same prescriptions, and the same comment regarding the failure of conservative treatment being sufficient to warrant a surgical recommendation.

On March 4, 2013, Dr. Williams performed an anterior lumbar interbody fusion at L5-S1.[28]

---

[26]     Rec. Doc. 9-1 at 208.

[27]     Rec. Doc. 9-1 at 181-184.

[28]     Rec. Doc. 9-1 at 179-180, 185-187, 190-204, 262-269.

The claimant's first post-operative visit with Dr. Williams was on March 19, 2013.[29] Dr. Williams noted that x-rays showed well-placed instrumentation and graft. Physical examination showed that the claimant was neurologically intact except for diminished sensation to the anterior left thigh. The claimant's lower extremity pain was minimal, and his lumbar pain was persistent but decreased. Dr. Williams recommended a light walking regimen. The Lortab and Mobic prescriptions were continued.

The second post-surgical follow-up visit with Dr. Williams was on April 16, 2013.[30] The straight leg raise tests remained negative, and the toe rise and walk, heel walking, and tandem walking tests were now normal. The neurological correlation with S1 nerves had also returned to normal. X-rays showed a lumbar spine with status post L5/S1 fusion with stable and fusing construct. Dr. Williams noted that the claimant was doing well. He continued to prescribe the same medications, recommended walking, and stated that the claimant should avoid bending, twisting, and lifting more than twenty pounds.

Shortly after midnight on July 10, 2013, the claimant presented at the emergency room of Opelousas General Health System in Opelousas, Louisiana,

---

[29]   Rec. Doc. 9-1 at 250-251.

[30]   Rec. Doc. 9-1 at 252-253.

-9-

complaining about anxiety and heart palpitations.[31]  He was discharged about two hours later in stable condition and with instructions to follow up with his primary care physician.  He was in no pain.

The claimant again saw Dr. Williams on July 16, 2013 for a post-surgery consultation.[32]  Dr. Williams noted that the claimant had recently been in a motor vehicle accident but was "doing okay."  He had a healed scar and mild soft tissue pain with palpation at the lower lumbar region.  Some limitation in his range of motion at the lumbar spine was noted.  Sitting and supine straight leg raise tests were negative, and the toe rise and walk, heel walking, and tandem walking tests were all normal. Muscle strength, neurological motor testing, neurological sensory testing, and reflexes were all normal.  The diagnoses assigned were lumbar back pain and lumbar spondylosis.  Dr. Williams advised him to walk and to avoid bending, twisting, or lifting more than twenty pounds.  Dr. Williams also added a Flexeril prescription.

The claimant again followed up with Dr. Williams on October 17, 2013.[33]  Dr. Williams noted:  "He is doing well.  No complaints noted."  All of the objective testing was normal.   X-rays showed a solid fusion at L5/S1.   Dr. Williams

---

[31]     Rec. Doc. 9-1 at 289-296.

[32]     Rec. Doc. 9-1 at 275-276.

[33]     Rec. Doc. 9-1 at 277-278.

discontinued the Flexeril and added Norco along with the long-standing prescriptions of Lortab and Mobic.  The claimant was again advised to walk and to avoid bending, twisting, or lifting more than twenty pounds.

On December 10, 2013, the claimant was transported to the emergency room at Opelousas General Health System following a motor vehicle accident in which his air bag deployed.[34]  The claimant was complaining of back pain.  He was moderately tender to palpation over the lower back and left knee.  X-rays revealed postoperative changes consistent with his surgery.  No gross dislocation of the orthopedic hardware was noted, and the remaining vertebral body heights and intervertebral disc spaces were well maintained.  The claimant was prescribed Tramadol for pain and Cyclobenzaprine HCL, a muscle relaxer.  He was discharged with instructions to follow up with his primary care physician.

At the time of the hearing in February 2014, the claimant was taking Metformin, Glyburide, and Januvia for his diabetes; Crestor for high cholesterol; Metoprolol for high blood pressure, and Cyclobenzaprine and Hydrocol APAP due to his back surgery.[35]

---

[34]     Rec. Doc. 9-1 at 279-288.

[35]     Rec. Doc. 9-1 at 175.

At the hearing, the claimant testified that he has had only a little improvement since his back surgery.[36]  He stated that he has a nagging pain all the time that, with medication, remains at about a four or five on a scale of one to ten.[37]  He stated that he can only sit for about ten to fifteen minutes and can only walk for about ten to fifteen minutes at a time.[38]  He stated that he cannot lift anything heavier than a carton of milk.[39]  He also complained of depression,[40] but testified that he has not seen a doctor for that condition.[41]  He stated that his pain medication causes drowsiness, fatigue, and sweating.[42]  He complained that his memory and his ability to concentrate are impaired, and that he is irritated and short of patience.[43]  He stated that he requires naps during the day,[44] does no yard work, and does very little housework.[45]  He

---

[36]     Rec. Doc. 9-1 at 30.

[37]     Rec. Doc. 9-1 at 30.

[38]     Rec. Doc. 9-1 at 30-31.

[39]     Rec. Doc. 9-1 at 30.

[40]     Rec. Doc. 9-1 at 30.

[41]     Rec. Doc. 9-1 at 38.

[42]     Rec. Doc. 9-1 at 32-33.

[43]     Rec. Doc. 9-1 at 33.

[44]     Rec. Doc. 9-1 at 34.

[45]     Rec. Doc. 9-1 at 34-35.

testified that medication sometimes controls his diabetes and high blood pressure but sometimes does not.[46]

The claimant contends that he is disabled, and he seeks to have the Commissioner's adverse ruling reversed.

## ANALYSIS

### A.   STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[47]   "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[48]   Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[49]

---

[46]     Rec. Doc. 9-1 at 35-36.

[47]     *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[48]     *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[49]     *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

-13-

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[50]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[51]  Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[52]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[53]

## B.   Entitlement to Benefits

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are

---

[50]     42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[51]     *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

[52]     *Martinez v. Chater*, 64 F.3d at 174.

[53]     *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.

-14-

both insured and disabled, regardless of indigence.[54]  Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[55]

The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[56]  A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[57]

---

[54]     See 42 U.S.C. § 423(a).

[55]     42 U.S.C. § 1382(a)(1) & (2).

[56]     42 U.S.C. § 1382c(a)(3)(A).

[57]     42 U.S.C. § 1382c(a)(3)(B).

-15-

C.    **Evaluation Process and Burden of Proof**

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  This process required the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work.[58]  "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[59]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[60] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[61]  The claimant's residual functional capacity is used at the fourth step to

---

[58]      20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[59]      *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

[60]      20 C.F.R. § 404.1520(a)(4).

[61]      20 C.F.R. § 404.1545(a)(1).

determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[62]

The claimant bears the burden of proof on the first four steps.[63]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[64]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[65]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[66]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[67]

---

[62]     20 C.F.R. § 404.1520(e).

[63]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[64]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[65]     *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[66]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[67]     *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

D.    **THE ALJ'S FINDINGS AND CONCLUSIONS**

In this case, the ALJ determined, at step one, that the claimant has not engaged in substantial gainful activity since December 4, 2012.[68]  This finding is supported by the evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments:  lumbar spondylosis, status-post decompression and fusion of the lumbar spine, diabetes mellitus, obesity, and hypertension.[69]  This finding is supported by evidence in the record and is not challenged by the claimant.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[70]  The claimant does not challenge this finding.

The ALJ found that the claimant has the residual functional capacity to perform work at the light level except that he is limited to occasional stooping, climbing, crouching, and crawling.[71]  The claimant challenges this finding.

---

[68]     Rec. Doc. 9-1 at 14.

[69]     Rec. Doc. 9-1 at 14.

[70]     Rec. Doc. 9-1 at 15.

[71]     Rec. Doc. 9-1 at 15.

At step four, the ALJ found that the claimant is capable of performing his past relevant work as a hydro-tester.[72]  The claimant challenges this finding.

At step five, the ALJ found that the claimant was not disabled from December 4, 2012 through June 26, 2014 (the date of the decision) because there are jobs in the national economy that he can perform.[73]  The claimant challenges this finding.

## E.   THE ALLEGATIONS OF ERROR

Mr. Mickens generally claims that the ALJ erred in concluding that he is not disabled and was not entitled to a period of disability.  More specifically, Mr. Mickens claims that the ALJ failed to give proper weight to the opinions of his treating physicians and erred in finding that his hearing testimony complaints of pain were not credible.

## F.   THE CLAIMANT'S GENERAL ALLEGATIONS OF ERROR

The claimant's first two assignments of error are too general to be considered by the Court.  The claimant contends that the ALJ erred in reaching the ultimate conclusion that the claimant is not disabled and erred in not ordering a period of disability.  However, the claimant did not support either of these contentions with specific supporting evidence from the record.  For example, the claimant did not

---

[72]      Rec. Doc. 9-1 at 19.

[73]      Rec. Doc. 9-1 at 19-20.

-19-

suggest what period of time would be appropriate for a period of disability.  The Court's scheduling order requires a claimant to set forth the specific errors committed at the administrative level and states that a general allegation that the ALJ's findings are unsupported by substantial evidence is insufficient to invoke the appellate function of the Court.  (Rec. Doc. 6 at 2).  The claimant's briefing fails to satisfy these minimal requirements.  Accordingly, the claimant's first two assignments of error will not be considered.

## G.   DID THE ALJ IMPROPERLY WEIGH THE TREATING PHYSICIANS' OPINIONS?

The claimant's third assignment of error is that the ALJ failed to give proper weight to the opinions of his treating physicians.  The Social Security regulations and rulings explain how medical opinions are to be weighed.[74]  Generally, the ALJ must evaluate all of the evidence in the case and determine the extent to which medical source opinions are supported by the record, but the ALJ has sole responsibility for determining the claimant's disability status.[75]  Although a treating physician's opinions are not determinative, the opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great

---

[74]   20 C.F.R. § 404.1527(c), § 416.927(c), SSR 96-2p, SSR 96-5p.

[75]   *Newton v. Apfel*, 209 F.3d at 455.

-20-

weight by the ALJ in determining disability.[76]  In fact, when a treating physician's

opinion regarding the nature and severity of an impairment is well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in the record, the ALJ must give that

opinion controlling weight.[77]

In this case, the ALJ gave "significant weight" to Dr. Williams's opinions and

gave only "little weight" to the exertional and environmental limitations suggested

by the state agency medical consultant Dr. Emily Eisenhauer.[78]  When the claimant

first saw Dr. Williams, Dr. Williams restricted him to light duty work.  It is unclear,

however, whether the light duty work referred to by Dr. Williams correlates precisely

with light work, as that term is defined in the Social Security regulations.  Following

surgery, Dr. Williams recommended that the claimant start a walking regimen.  The

only restrictions Dr. Williams imposed after the claimant's surgery were that he

should avoid bending, twisting, or lifting more than twenty pounds.  The physical

exertion requirements for light work are defined in the regulations as follows:

---

[76]    *Pineda v. Astrue*, 289 Fed. App'x 710, 712-713 (5th Cir. 2008), citing *Newton v. Apfel*, 209 F.3d at 455.

[77]    20 C.F.R. § 404.1527(c)(2).  See, also, *Loza v. Apfel*, 219 F.3d at 393.

[78]    Rec. Doc. 9-1 at 18.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.[79]

The lifting restriction imposed by Dr. Williams does not limit the claimant's ability to do light work, and Dr. Williams has recommended to the claimant that he engage in a walking regimen. Therefore, there is no evidence in Dr. Williams's treatment notes contradicting the ALJ's conclusion that the claimant can perform light work. Consequently, there is no basis for the claimant's argument that Dr. Williams's opinions should have been given more weight.

## H.   DID THE ALJ IMPROPERLY EVALUATE THE CLAIMANT'S CREDIBILITY?

The claimant contends that the ALJ erred in evaluating his credibility, particularly with regard to his subjective pain complaints. The ALJ found that the claimant has medically determinable impairments that could reasonably be expected to cause his alleged symptoms but found that his statements regarding the intensity,

---

[79]   20 C.F.R. § 404.1567.

-22-

persistence and limiting effects of his symptoms are not entirely credible.[80]   This
Court finds that the ALJ's evaluation of Mr. Mickens's credibility was conducted in
accordance with the required legal standards and is supported by substantial evidence
in the record.

The claimant's primary complaint is low back pain.  Pain can constitute a
disabling impairment,[81] but pain is disabling only when it is constant, unremitting,
and wholly unresponsive to therapeutic treatment.[82]   Mild or moderate pain is not
disabling.  Furthermore, subjective complaints, such as complaints of pain, must be
corroborated by objective medical evidence.[83]   While an ALJ must take into account
a claimant's subjective allegations of pain in determining residual functional capacity,
the claimant must produce objective medical evidence of a condition that reasonably
could be expected to produce the level of pain alleged.[84]   The mere existence of pain
does not automatically create grounds for disability, and subjective evidence of pain

---

[80]     Rec. Doc. 9-1 at 16.

[81]     *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Cook v. Heckler*, 750 F.2d 391,
395 (5th Cir. 1985).

[82]     *Falco v. Shalala,* 27 F.3d at 163; *Selders v. Sullivan*, 914 F.2d at 618-19.

[83]     *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

[84]     *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989).

does not take precedence over conflicting medical evidence.[85]   The absence of objective factors can justify the conclusion that a witness lacks credibility.[86]

In this case, the claimant certainly has a medical condition that can cause pain. However, Dr. Williams's records show that the objective measures of his back condition had fully resolved – except for a limited range of motion in the lumbar spine – following the successful lumbar surgery.  At his first post-operative visit, Dr. Williams noted that the claimant's back pain was persistent but decreased; at his most recent visit with Dr. Williams, the claimant was "doing well" and had "no complaints."  At that time, only mild soft tissue pain was produced with palpation at the lower lumbar region.  Furthermore, the special spine tests were all normal, the claimant's muscle strength was normal, neurological motor testing was normal, neurological sensory testing was normal, and his reflexes were normal.  His gait was normal, there was no visible muscle atrophy, no soft tissue triggers were detected by palpation, and there were no muscle spasms.

Factors that an ALJ may consider in evaluating the claimant's subjective complaints include: (1) the claimant's daily activities; (2) the medication the claimant

---

[85]     *Harper v. Sullivan*, 887 F.2d at 96.

[86]     *Dominguez v. Astrue*, 286 Fed. App'x 182, 187 (5th Cir. 2008), citing *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988) (*per curiam*).

takes for pain; (3) the degree of medical treatment the claimant received; (4) the lack of medical opinions in the record indicating that the claimant is precluded from performing the level of activity indicated by the ALJ; and (5) external manifestations of debilitating pain such as marked weight loss.[87]  In her ruling, the ALJ reviewed the claimant's usual activities, reviewed his prescribed medications, reviewed the medical treatment he has received, reviewed the restrictions placed on his activities by his physicians, and mentioned his appearance at the hearing.  Thus, the ALJ used the proper legal standard for evaluating his pain complaints.

The claimant testified at the hearing that his pain is responsive to medication and is moderate – a four or five on a scale of one to ten – when he takes his medication.  Thus, his pain is not wholly unresponsive to therapeutic treatment.  He has been prescribed the same dosage of pain medication over the entire course of his treatment with Dr. Williams.  The dosage has never been increased, stronger pain medication has never been prescribed, the claimant has not been referred to a pain management specialist, and the treatment notes are devoid of complaints of severe or unremitting pain – either to Dr. Williams or to Dr. Guillory.  These facts support the ALJ's conclusion that the claimant's pain is not as severe as he contends it is.

---

[87]     *Gill v. Colvin*, No. 12-2771, 2014 WL 801455, at *7 (W.D. La., Feb. 28, 2014).

Mr. Mickens testified at the hearing that he suffers with depression, but he admitted that he has not sought treatment for that condition.  The fact that he has not sought treatment for this alleged condition supports the conclusion that it is not as debilitating as the claimant suggests.

Mr. Mickens testified at the hearing that he has significant side effects from the medications he takes both for his back condition and also for his diabetes.  But there is no indication in the record that he ever mentioned these alleged side effects to his physicians.  His failure to seek medical help with these alleged side effects supports the conclusion that his complaints about the side effects are not credible.

Furthermore, the record establishes that the claimant has not been compliant with the medications prescribed by Dr. Guillory for his diabetes, hypertension, and high cholesterol, and he has not made the lifestyle changes recommended by Dr. Guillory.  The claimant did state, however, that his diabetes and hypertension are sometimes controlled by medication.  A condition that can be controlled or remedied by medication or therapy cannot serve as a basis for a finding of disability.[88]

Therefore, the ALJ's analysis of the claimant's credibility is supported by substantial evidence in the record.  When an ALJ's credibility determination is

---

[88]     *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988).

-26-

supported by substantial evidence, it is entitled to judicial deference.[89]  Having found that the ALJ in this case applied the proper legal standard in evaluating the claimant's credibility and having found that the ALJ's evaluation was supported by substantial evidence, this Court defers to the ALJ's credibility analysis.

## I.    THE ALJ DID NOT ERR AT STEP FOUR

Although not clearly articulated, the claimant's challenge to the ALJ's ruling seems to focus on whether he remains capable of performing his past relevant work. At step four of the sequential analysis, the ALJ found that the claimant is capable of performing his past relevant work as a pipeline hydro-tester.  Past relevant work is defined as "the actual demands of past work or 'the functional demands. . . of the occupation as generally required by employers throughout the national economy.'"[90] A step four determination may rest on descriptions of past work as actually performed or as generally performed in the national economy.[91]

Although the claimant described his actual past work, while testifying at the hearing, as having required tasks that would place it in a heavy work category, the vocational expert who testified at the hearing classified this work as light work in

---

[89]    *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

[90]    *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing Social Security Ruling 82–61).

[91]    *Villa v. Sullivan*, 895 F.2d 1019 (5th Cir. 1990).

-27-

accordance with the Dictionary of Occupational Titles and how the work is generally performed in the national economy.[92]   The claimant did not carry his burden of proving that he is incapable of doing that work.   His treating physician's restrictions seem to correlate with the ALJ's finding that he can perform light work, and the ALJ found that the claimant retains the residual functional capacity to do light work. Having found that the claimant has a residual functional capacity to perform light work, the ALJ did not err in finding that he was capable of performing his past relevant work as it is generally performed.

### CONCLUSION AND RECOMMENDATION

The undersigned finds that the ALJ applied appropriate legal standards in ruling on this case, and the ALJ's findings are based on substantial evidence in the record.   Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned Magistrate Judge that the decision of the Commissioner be **AFFIRMED** and this matter be dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of

---

[92]   Rec. Doc. 9-1 at 41.

Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 18th day of August 2016.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE